UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Rebecca Hodges, et al.,** | ) | **CASE NO. 1:12 CV 2851** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Salvanalle, Inc., et al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

### Introduction

This matter is before the Court upon plaintiffs' Motion for Partial Summary Judgment (Doc. 54) and plaintiffs' Motion to Strike the Testimony of Vern Waldow Including his Affidavit and all Attachments thereto/ Motion for Sanctions (Doc. 64). This case arises under the Fair Labor Standards Act. For the following reasons, plaintiffs' Motion for Partial Summary Judgment is GRANTED, plaintiffs' Motion to Strike the Testimony of Vern Waldow Including his Affidavit and all Attachments thereto is GRANTED, and plaintiffs' Motion for Sanctions is DENIED.

### Facts

Plaintiffs Rebecca Hodges, Gladys Brown, Loney Ray Murphy, and Tyler Kithcart on behalf of themselves and all others similarly situated[1] filed this Complaint against defendants Salvanalle, Inc. dba Everdry Waterproofing of Central Ohio and Cheryl B. Nalle. The Complaint states that it is a collective action lawsuit brought under the Fair Labor Standards Act (FLSA) and the Ohio Minimum Fair Wage Standards Act (OMFWSA) as a result of defendants' failure to pay non-exempt employees overtime compensation for hours worked in excess of 40 per week and/or minimum wages. The Complaint sets forth four claims. Count One alleges a FLSA overtime violation. Count Two alleges FLSA minimum wage violations. Count Three alleges OMFWA overtime violations. Count Four alleges OMFWA minimum wage violations.

As defendants do not present their own version of the facts, the facts as presented by plaintiffs, and supported by evidence, are hereby set forth by the Court.

Salvanalle, Inc. is an Ohio corporation that owns and operates a basement waterproofing franchise known as Everdry Waterproofing of Central Ohio. Cheryl Nalle is its sole shareholder and only officer. There are no corporate directors and Nalle oversees the daily general management of the business.

The Complaint herein was filed on November 16, 2012. Thereafter, the parties stipulated to a tolling of the statute of limitations for all potential opt-in plaintiffs as of February 1, 2013, and to the issuance of notice to all potential plaintiffs defined as "Current and Former Employees of Salvanalle, Inc. (doing business as "Everdry of Central Ohio") any time on or after February

---

[1] As of the date of the filing of the Motion for Partial Summary Judgment, 33 additional plaintiffs joined the action.

1, 2008." Both stipulations were so ordered by this Court.[2]

As a result of discovery, the parties identified all of the available time records, payroll records, and employee personnel files for each of the plaintiffs. (Doc. 55 Vol. I-III)[3] Defendants acknowledged, through responses to requests for admission, that no other time records, payroll records, or personnel records exist.

Defendants compensated each of the plaintiffs on the basis of a day rate. In addition to the day rate, each of the plaintiffs was eligible for bonus compensation based upon attendance and sales. Defendants failed to maintain records of the bonus compensation earned by each employee and further failed to include bonus compensation in employees' regular pay but, instead, paid it out in either cash or by check. Nalle admitted that she did not know if commissions were factored in the determination for premium pay or overtime. David Pesec, who wrote the computer program for employee compensation, testified that when such bonus compensation was added, it was added to the total pay value and not the employee's regular rate.

None of the plaintiffs was paid a salary or was an exempt employee under the FLSA. Each of the plaintiffs was treated as a day rate employee subject to a reduction in compensation for any hours not worked.  Each of the plaintiffs was also eligible for "premium pay" or "drive time" pay which was expressly excluded by defendants for overtime compensation.

---

[2] Defendants argue at great length in their brief in opposition that they are "not bound" by the stipulations.  However, the Court noted at the July 9, 2013 Status Conference that the stipulations entered into prior to defendants' counsel's appearance would remain in place.  Moreover, as plaintiffs point out, the equitable tolling agreement between the parties is relevant to damages and not liability which is the only issue before this Court.

[3] These three volumes were compiled by plaintiffs and consist of 1574 documents.

3

Defendants typically recorded employee hours with a time clock system with employees clocking in and out for each work day. The time cards were collected by Pesec who prepared the payroll records. Defendants failed to properly maintain records of all hours worked by each of their employees. For instance, defendants admit that they have produced no time cards for plaintiffs Dave Kelly, Olivia Augustine, Jordan Engler, Louis Elbert, Richard Hicks, Anthony Baum, Michael Branham, and Charles Alexander. Defendants only produced partial time cards for all the remaining plaintiffs.

Defendants admit that they only maintained payroll worksheets for the years 2009 and 2010 for employees in the production department. Defendants did not maintain similar records for any employee other than production department installers. Defendants did not attempt to record hours worked by some employees. To the limited extent that defendants maintained records, those records are incomplete as evidenced by missing 2009 and 2010 payroll worksheets.

Plaintiffs worked in different capacities for defendants. They typically worked in excess of 40 hours each week but were not paid overtime at the rate of one and one-half times their regular rate of pay, their compensation frequently fell below the Ohio minimum wage requirements, and they were not paid for all hours worked.

Pesec assumed payroll responsibilities in October 2010. He did not receive any formal training on performing the payroll duties. His educational background is in information technology management, not accounting. Pesec testified that he received no training on how to calculate employee compensation as required by the Department of Labor, and never asked anyone outside Salvanalle, Inc. to review his program to insure its compliance.

This matter is now before the Court upon plaintiffs' Motion for Partial Summary Judgment and Motion to Strike the Testimony of Vern Waldow Including his Affidavit and all Attachments thereto/ Motion for Sanctions.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993). The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs.,*

*Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

**(1) Motion to Strike**

Defendants responded to plaintiffs' Motion for Partial Summary Judgment by submitting the affidavit of Verne Waldow who states that he had "recently been retained" by defendants' attorney to serve as an expert witness and had prepared his expert report "within the last week." He avers that his "audit of Salvanalle's records shows that it fully complied with the requirement of maintaining payroll records for the required period." Waldow's expert report, dated December 15, 2013, states that "most of [his] remarks... are directed against statements contained in Plaintiffs' Motion for Partial Summary Judgment."

Plaintiffs seek to strike the testimony of Vern Waldow including his affidavit and its attachments. Plaintiffs also move for sanctions. For the following reasons, the Court agrees that Waldow's affidavit and report must be stricken. Sanctions will not be issued at this time.[4]

---

[4] However, this Court did issue the following Minutes/Order on June 24, 2013: "In-person Status Conference was set. Mr. Scott and Mr. Winters appeared on behalf of the Plaintiffs. Mr. Halligan failed to appear. Ms. Lang, who is not an

Plaintiffs move to strike on the following bases, all of which are sound.

This Court's May 8, 2013 Case Management Order provided that expert reports were to be exchanged on or before October 31, 2013 for the party with the burden of proof and November 29, 2013 for rebuttal reports.  Although plaintiffs produced their expert report to defendants on October 31, 2013, defendants did not comply with either date and did not produce an expert report on issues for which they have the burden of proof or a rebuttal report.  For the first time, defendants have submitted Waldow's affidavit and expert report as an exhibit to their brief in opposition to plaintiffs' Motion for Partial Summary Judgment.[5] Defendants have not sought leave for, or even acknowledged, their untimely disclosure.  Plaintiffs contend that they would be prejudiced by this late submission given that they will not have a meaningful opportunity to engage in expert discovery by submitting written discovery requests regarding the report or have an opportunity to depose the expert.

Defendants present the following arguments in opposition to the Motion to Strike, none of which are persuasive.  Plaintiffs should not be surprised by the affidavit of the expert given that defendants' counsel identified him in this Court's chambers on three different occasions and he was mentioned during Nalle's and Pesec's depositions.  Yet plaintiffs did not request to take his deposition. Defendants "disagree" that Waldow's report should have been filed by November 29, 2013 given that it "does not directly respond to the report of plaintiffs' expert, but

---

attorney of record, appeared via telephone for the Defendants. Defendants are to provide discovery by 6/27/13 or sanctions will be issued. Status Conference is set 7/9/13 at 10:00 a.m. Counsel of record and clients must appear."

[5]    Plaintiffs point out that they have filed two notices of discovery disputes which resulted in the Court directing defendants to provide discovery.  Nor did defendants make initial disclosures or supplements thereto.

7

instead is expressly geared to refute arguments made in the pending Motion for Summary Judgment." (Doc. 65 at 2) There is no surprise given that Waldow only reviewed the evidence before the Court and opined on the issues raised in the Complaint.  Additionally, plaintiffs' own expert, who previously knew Waldow at the Department of Labor, knew in October 2013 that Waldow was working as an expert for defendants.

These arguments are not convincing. The Court agrees with plaintiffs that defendants' mention of Waldow does not meet the requirements of Rule 26 or this Court's Case Management Order. Plaintiffs had a right to rely on defendants' failure to timely produce an expert report as an indication that defendants did not intend to rely on expert testimony, making expert discovery unnecessary.  Waldow's statement, and defendants' argument, that the report was prepared only to oppose the summary judgment motion does not excuse its untimeliness or exempt defendants from the Civil Rules or this Court's discovery order.

Aside from its untimeliness, plaintiffs challenge the affidavit and report on other bases. Plaintiffs point out that the report states, "Although defendants' flawed computer template did cause some violations, it also caused the company to overcompensate many workers by paying them more than was required by minimum wage and overtime."  (Waldow rept. at 1) But, Waldow does not state that any plaintiffs were included in overcompensated employees.

Plaintiffs additionally point out that Waldow references electronically stored data and other evidence that was not produced in discovery. This cannot be permitted. Plaintiffs filed two notices of discovery disputes to obtain basic discovery and then had defendants admit, through requests for admission, that all available information for each of the plaintiffs had been produced.  None of the information was in electronic format.  Pesec confirmed at deposition that

8

he had not been able to locate any electronic data.  Defendants do not claim that they have provided electronically stored information to plaintiffs, but only counter that Waldow avers that he reviewed all documents which defendants produced to plaintiffs during discovery.  Aside from the fact that Waldow would have no knowledge of what documents were provided to plaintiffs other than what defendants represented as being provided, Waldow also avers, "I reviewed numerous documents maintained by Salvanalle, Inc., including all those documents which it produced to plaintiffs' counsel during discovery in this lawsuit."  (Waldow aff. ¶ 6)  Thus, the affidavit indicates that other records were reviewed other than those disclosed in discovery.

Plaintiffs point out that defendants admitted, through requests for admission, that they only maintained limited records for some of the plaintiffs and no records for other plaintiffs.  Waldow's affidavit and report seek to contradict defendants' admissions by suggesting that defendants did keep and maintain records as required by the FLSA.  ("My audit of the firm's records shows that the firm did keep and maintain records as required by the FLSA.  There is a record of starting and quitting time, a weekly total of hours worked, and a record of payments made and how they were calculated.  These records are readily available for all in electronic format.") Defendants admitted that no other time records outside of the time cards existed.  Waldow's statements contradict defendants' admissions.  In their brief, defendants do not respond to this argument.  Rather, the admissions establish that defendants did not maintain all required records.

Nor did defendants respond to plaintiffs' assertion that Waldow improperly opines that he "disagrees" with plaintiffs' statement that defendants habitually failed to pay overtime.

9

Waldow stated,

> I disagree with this characterization. I do not believe that the company was trying to cheat employees out of the overtime that was due them. I would characterize it as an administrative programming error. The payment of the half-time by using the regular rate principle is not easily comprehended. Due to this programming error the half-time was miscalculated. And some employees were underpaid their overtime premium pay. Obviously there is a back wage liability. My audit calculated a total of $13,495.41 for the years 2010 through 2013.

(Waldow report at 4) Defendants did not respond to plaintiffs' contention that Waldow is improperly testifying as to defendants' intent or state of mind.

Plaintiffs made other arguments for exclusion under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311 (9th Cir. 1995), to which defendants did not respond including Waldow's failure to base his opinions on reliable evidence concerning defendants' compliance with the record keeping requirements of the statutes since he relied only on a small smattering of records including isolated pay periods for a few of the plaintiffs. Nor is Waldow's opinion that the back wage liability is $13,495.41 supported by a calculation or supporting documentation detailing a reliable methodology for this conclusion.

For these reasons, Waldow's affidavit and report are stricken. The report is untimely and is insufficient on the bases stated above.

**(2) Motion for Partial Summary Judgment**

The motion seeks partial summary judgment establishing defendants' liability for violations of the FLSA and OMWFA.[6] Plaintiffs move for summary judgment on six issues

---

[6] Plaintiffs state that the motion focuses on violations as to the named plaintiffs, but also provides evidence of a practice generally applicable to some, many, or all opt-in plaintiffs and that after liability is established, a trial as to damages will allow the named and opt-in plaintiffs the ability to present individualized evidence showing the extent to which they have been damaged under one or more

10

**(a) Cheryl Nalle is an employer as defined by the FLSA**

Relying on the broad definition of the term "employer" contained in the FLSA, "any person acting directly or indirectly in the interest of an employer in relation to an employee," and Sixth Circuit authority addressing when individual owners are employers to be held personally liable for damages, plaintiffs move for summary judgment as to Nalle's status.  Plaintiffs point to evidence showing Nalle's operational control over Salvanalle, her sole ownership of the company, and her ultimate control over the employment decisions made by the company. Defendants do not address this issue and, therefore, do not contest the applicable law or the evidence.

The Court finds the unopposed argument and evidence support that Nalle is an employer under the FLSA to be held individually liable for violations under the act. In particular, the Court determines that the evidence shows that Nalle had operational control over Salvanalle, Inc. so that she is legally an "employer" responsible for the company's FLSA obligations.  *Cook v. Carestar, Inc.,* 2013 WL 5477148 (S.D.Ohio Sept. 16, 2013) (*citing U.S. Department of Labor v. Cole Enterprises, Inc.,* 62 F.3d 775 (6th Cir. 1995) and *Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962 (6th Cir. 1991)).

**(b) Defendants have a practice or policy of failing to keep and maintain wage records as required under the FLSA and OMFWSA**

The FLSA requires that

> Every employer ... shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time...

---

of the FLSA violative practices or policies.

29 U.S.C. § 211(c). Employers must keep payroll records for a period of three years, and preserve time sheets for two years. 29 C.F.R. §§ 516.5(a) and 516.6(a)(1). State law requires substantially the same. O.R.C. § 4111.14(F).

> The Sixth Circuit has recognized,
>
> where the employer's records are inaccurate or inadequate ... an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Herman v. Palo Group Foster Home, Inc.*, 183 F.3d 468 (6th Cir. 1999) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)) (other citations omitted).

> Plaintiffs maintain:
>
> First, Defendants failed to maintain time cards and other records for most or all employees. Second, the fragmentary wage records that do exist show that for certain employees Defendants did not create records of time worked, but simply noted when non-exempt employees had worked a day or a shift. For these records, Defendants did not make records complaint [sic] with the ... FLSA and OMFWSA record keeping provisions, though they did maintain non-complaint [sic] records...

(Doc. 54 at 11-12) Relying on defendants' answers to Requests for Admission and evidence submitted, plaintiffs further assert:

> There is no genuine dispute in this case regarding Defendants' failure to maintain the wage and hour records required by the FLSA and Ohio revised code. Defendants admit that they have failed to maintain *any* time records for Plaintiffs Dave Kelly, Olivia Augustine, Jordan Engler, Louis Elbert, Richard Hicks, Anthony Baum, Michael Branham, and/or Charles Alexander. (See, Defendants' Responses to Plaintiffs' First Set of Requests For Admissions, No. 87.) There is not a single wage record in Defendants' records for these employees. Further, Defendants admit that they have provided incomplete records for each of the other Plaintiffs. The regulations specifically require a record of the "hours worked each day" by each employee. See e.g. O.R.C. § 4111.08.

12

> Only a small portion of time cards exist for the named and opt-in plaintiffs which meet these requirements. Further, some of Defendants' wage records which might show the daily or weekly hours worked tally only the number of days or shifts worked, not the hours worked, including clock-in and clock-out times. The records for Christopher Scott (Bates 68-72) and Abby Stake (Bates 58-59) are examples of time cards lacking this basic information.

(*Id.* at 13-14)

In response, defendants rely on Waldow's report which this Court may not consider as it has been stricken. Even if the Court considered it, the report does not preclude summary judgment on this issue. Waldow states that although plaintiffs assert that defendants admit that they have produced no time cards for the plaintiffs named above, he "found payroll records which show hours work [sic] and pay for both Anthony Baum and Charles Alexander." Waldow also states that he "strongly objects" to plaintiffs' statement that the undisputed evidence shows defendants' failure to maintain records. Waldow states:

> My audit of the firm's records shows that the firm did keep and maintain records as required by the FLSA. There is a record of starting and quitting time, a weekly total of hours worked, and a record of payments made and how they were calculated. These records are readily available for all in electronic format.

(Waldow report at 3, 4)

Plaintiffs point out, however, that defendants previously admitted that they only maintained limited records for some of the plaintiffs and no records for the remaining plaintiffs. (see Doc. 63 at 12 identifying the specific Requests for Admission). As previously stated, Waldow's report seeks to contradict the admissions that no other time records outside of the time cards existed although defendants have not sought to withdraw or amend their responses to the Requests for Admission. Moreover, the Court agrees with plaintiffs' undisputed argument that

> Waldow's own report reveals that he does not have a sufficient basis for concluding Defendants' [sic] complied with the FLSA's record keeping requirements. Waldow's

13

>report and the attached exhibits identify records for isolated pay periods for a few of the Plaintiffs. For instance, in suggesting Defendants' properly maintained records for Anthony Baum and Charles Alexander, Waldow references exhibits documenting only 2 pay periods for each of them. Waldow's 2010 "audit" report only references 7 of the Plaintiffs and for only 1 pay period—August 13, 2010. His 2012 "audit" report only references 2 of the Plaintiffs (Loney Ray Murphy and Gladys Brown) for a total of 2 pay periods. Loney Murphy worked at Everdry from September, 2011 through February, 2012. (Depo. of Loney Ray Murphy at 7) Gladys Brown was employed by Everdry from September 21, 2011 through February 21, 2012. (Depo. of Gladys Brown at 7) Obviously, Defendants were obligated to maintain complete wage and hour records. Waldow's "audit" does not reveal any other records and does not reveal facts that would support his conclusion that Defendants complied with the records keeping requirements of the FLSA. Waldow's audits further do not specifically identify any payroll records for many of the remaining Plaintiffs.

(Doc. 63 at 14)

For these reasons, summary judgment is warranted on defendants' failure to  keep and maintain wage records as required under the FLSA and OMFWSA.

**(c) defendants have a practice or policy of failing to pay overtime at a rate of 1.5x the regular rate as required under the FLSA and OMFWSA**

Plaintiffs argued at length in their motion, supported by evidence and their expert report, that defendants failed to pay overtime at a rate of 1.5x their regular rate of pay.  Plaintiffs argued the following.  The FLSA requires that the employer pay minimum wage for all hours worked and over premium pay at a rate of 1.5x the employee's regular rate of pay for hours worked over 40 in a single workweek.  Plaintiffs were paid three types of wage payments: day rate wages, drive time premium pay, and bonus payments.  From approximately 2011 through 2012, defendants used an elaborate yet flawed formula to automatically calculate pay for production department employees. Handwritten spreadsheets were produced from 2009 and 2010 showing

14

the same calculations.  Plaintiffs' expert report is presented to show, as to one employee[7], how defendants' formula incorrectly calculated drive time pay and did not include overtime pay.  As a result, the employee's day rate plus drive time premium pay comes to less than minimum wage.

In response to the motion, defendants generally concede that they had a practice or policy of failing to pay overtime at a rate of 1.5x the regular rate of pay by stating, "[I]t is agreed that defendant Salvanalle had a computer template that was somewhat flawed which did result in some violations of the FLSA and Minimum Wage Act..."  (Doc. 62 at 10) Defendants argue that while their system resulted in "some violations," they actually overcompensated some employees by paying them more than was actually required.

These assertions are based on the stricken testimony of Waldow.  But aside from these assertions, defendants do not dispute plaintiffs' evidence regarding the failure to pay overtime at a rate of 1.5x the regular rate.

Moreover, even if the Court considered Waldow's testimony that some employees were overpaid, this is not a defense to defendants' underlying liability for the weeks they did not comply with the act.[8]  *Herman v. Fabri-Centers of America, Inc.,* 308 F.3d 580 (6th Cir. 2002)

---

[7] Plaintiffs assert that at the damages stage, they will show, by ministerial calculation, how the other plaintiffs were damaged by the practice.

[8] Nor would Waldow's testimony help defendants on the overtime issue where he acknowledges, "I would characterize [unpaid overtime] as an administrative programming error.  The payment of the half-time by using the regular rate principle is not easily comprehended.  Due to this programming error the half-time was miscalculated.  And some employees were underpaid their overtime premium pay.  Obviously there is a back wage liability."  (Waldow report at 4)

(The court held that the "employer could use its contract premiums to offset overtime owed to its employees only within the same workweek as the missed overtime, not against total amount of overtime owed.") Therefore, the Court agrees with plaintiffs that a dispute over "surplus" payments or "overcompensation" from other weeks is not a material fact to defeat summary judgment.

Plaintiffs are entitled to summary judgment on this issue.

**(d) failure to pay overtime is not reasonable or in good faith**

Plaintiffs assert that defendants' payment of "only straight time for all overtime hours worked is the paradigmatic violation of the FLSA" and point out that the FLSA provides for liquidated damages for such a violation.[9] The violation was not reasonable given the evidence showing that defendants failed to properly train Pesec on performing payroll duties.

One district court has explained the Sixth Circuit law regarding the employer's heavy burden of demonstrating good faith and reasonableness:

> A district court, however, has the discretion not to award liquidated damages to a prevailing plaintiff if 'the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938.' " *Elwell v. Univ. Hosps. Home Care Servs*., 276 F.3d 832, 840 (6th Cir.2002) (quoting 29 U.S.C. § 260); *see also Herman v. Palo Grp. Foster Home*, 183 F.3d 468, 474 (6th Cir.1999). The burden on the employer is substantial and requires "proof that [the employer's] failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon [it] more than a compensatory verdict." *Elwell*, 276 F.3d at 840 (quoting McClanahan, 440 F.2d at 322) (internal quotations omitted). "In the absence of such proof [, however,] a district court

---

[9] The act provides that an employer who violates the minimum wage or overtime provisions "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

16

has no power or discretion to reduce an employer's liability for the equivalent of double unpaid wages." *Id.*

Defendants do not address this issue or dispute the evidence regarding Pesec's training.[10] Moreover, even if the Court were to consider Waldow's testimony, he concedes that Salvanalle had a flawed computer template which resulted in some violations of the act. Nor would Waldow's testimony regarding his belief that the company was not trying to cheat employees out of overtime be sufficient to meet the "heavy burden" on defendants of proving good faith and reasonableness. Therefore, an award of liquidated damages equal to the amount of back wages is appropriate.

---

[10]  Defendants submit Pesec's affidavit with their brief, but it largely addresses the execution of the stipulations.  Pesec's brief assertions regarding the merits of the claim do not dispute plaintiffs' assertion that defendant did not ensure that he was trained as to FLSA compliance:

(27) The plaintiffs have mischaracterized my deposition testimony in their brief.  I was asked on page 8 of my deposition, what my understanding was regarding my preparation of the payroll as to how compensation was to be determined. My response was: "It was -- I was always told it was compensated according to FLSA standards." This is what we did.

(28) Plaintiffs also claimed  that  I could  not  articulate the  spread  sheet calculations which resulted from the computer program which I wrote. Not true. I was handed a spread sheet as an exhibit during my deposition (page 83), and I then answered the questions explaining what each column and variable meant. This occurred on pages 83-90 of my deposition.

(29)   All  employees  except  for  management/supervisors  and  the commissioned salesmen were to maintain their own time cards from which their pay would be based. I ensured that the employees were fully paid based upon the hours set forth in their individual time cards.  I know of no instance where an employee was not paid according to his or her time card.

(Pesec aff.)

17

Summary judgment is appropriate on this issue.

**(e) "drive time" pay**

According to defendants' documents, plaintiffs were eligible for "premium pay" or "drive time" pay when they worked over 40 hours per week.  Defendants' personnel documents expressly state, "Drive time is not over time!"  Plaintiffs move for summary judgment on the basis that defendants offer no evidence justifying the exclusion of drive time premium pay from the regular rate.  Again, defendants offer no argument or evidence in opposition and, therefore, concede that drive time premium pay is not overtime pay.  Therefore, it cannot be used to offset overtime liability under the FLSA.

Summary judgment is warranted on this issue.

**(f) non-exempt status of plaintiffs Gladys Brown and Rebecca Hodges**

Plaintiffs move for summary judgment on the basis that representative plaintiffs Gladys Brown and Rebecca Hodges were not paid on a salary or fee basis and so are not administratively or managerially exempt employees within the meaning of either the federal or state act. Defendants did not respond to this argument and the Court finds the motion to be unopposed and summary judgment appropriate on this ground.

The FLSA requires overtime pay for each hour worked in excess of 40 hours per week unless the plaintiff is an exempt employee defined under the act's regulations.  Plaintiffs demonstrate, through evidence presented, that Brown and Hodges were not exempt employees and were not compensated for all hours worked.  The law and evidence is not disputed.[11] In fact,

---

[11]  Again, if the Court were to consider Waldow's report, he seems to be suggesting that damages owed these plaintiffs for violations be reduced, but he does not contest that a violation exists:  Brown and Hodges "may be due back wages for

it is the employer's burden to establish that a plaintiff is an exempt employee under the FLSA. *Orton v. Johnny's Lunch Franchise, LLC,* 668 F.3d 843 (6th Cir. 2012). As defendants present no evidence establishing their burden, summary judgment is granted as to the non-exempt status of Brown and Hodges for the reasons stated by plaintiffs.

**Conclusion**

For the foregoing reasons, plaintiffs' Motion for Partial Summary Judgment is granted, plaintiffs' Motion to Strike the Testimony of Vern Waldow Including his Affidavit and all Attachments thereto is granted, and plaintiffs' Motion for Sanctions is denied.

IT IS SO ORDERED.


　　　　　　　　　　　　　　　　　　/s/ Patricia A. Gaughan
　　　　　　　　　　　　　　　　　　PATRICIA A. GAUGHAN
　　　　　　　　　　　　　　　　　　United States District Judge

Dated: 2/12/14

---

　　　　unpaid premium pay (½ the regular rate), but no additional straight time would be due." (Waldow report at 4)